UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAIMA KHAN, <br><br> Plaintiff, <br><br> v. <br><br> ANTHONY J. BLINKEN, <br> Secretary of State, *et al.*, <br><br> Defendants. | Civil Action No. 21-1683 (JEB) |

**MEMORANDUM OPINION**

Plaintiff Saima Khan, a U.S. citizen, seeks a visa for her foreign-national fiancé, Kamil Khan.  She began the application process in March 2020, and her fiancé interviewed for a visa at the U.S. Embassy in Saudi Arabia in January 2021.  Since the interview, she alleges that his application has been unreasonably held up by administrative processing.

Plaintiff thus brought this suit, naming an extensive list of government officials as Defendants, to force a decision on the application.  She alleges that the delay violates the Administrative Procedure Act, 5 U.S.C. § 551 *et seq*., and the Mandamus Act, 28 U.S.C. § 1361, *et seq*.  Additionally, she alleges that the application has been improperly singled out for delay under the Department of Homeland Security's Controlled Application Review and Resolution Program (CARRP).

Defendants now move to dismiss under Federal Rule of Civil Procedure 12(b)(6). Because the Court finds that the processing delay is not unreasonable, it will grant the Motion.

1

**I.      Background**

The Court will provide a brief overview of the process for obtaining a fiancé visa before turning to the specifics of this case.

    A.      Fiancé(e) Visas

A fiancé(e) visa, also known as a K-1 visa, is a nonimmigrant visa that allows a foreign citizen to travel to the United States to marry a U.S.-citizen fiancé(e) and then apply for lawful-permanent-resident status.  See U.S. Dep't of Homeland Sec., Visas for Fiancé(e)s of U.S. Citizens (March 23, 2018), https://bit.ly/35j9Jup (USCIS Fiancé(e) Visa Information).  To obtain a K-1 visa, the U.S.-citizen fiancé(e) first submits an I-129F Petition for Alien Fiancé(e) to United States Citizenship and Immigration Services.  Id.; see also U.S. Dep't of Homeland Sec., Petition for Alien Fiancé(e) (July 23, 2020), https://bit.ly/3eJ57k5.  If USCIS determines that the foreign fiancé(e) is eligible for a K-1 visa, it sends the application to the State Department's National Visa Center (NVC).  See USCIS Fiancé(e) Visa Information.  NVC assigns an identification number to the application and forwards it to the relevant U.S. Embassy or Consulate, where the foreign fiancé(e) must then apply and interview for a K-1 visa.  See U.S. Dep't of State, Step 2: Begin National Visa Center (NVC) Processing (last visited Nov. 9, 2021), https://bit.ly/2JKANtW.  If a consular officer decides to issue the visa, the foreign-national fiancé(e) may travel to a U.S. port of entry and request admission to the United States.  Id.

    B.      Factual History

Saima (the Court uses first names to avoid confusion and repetition) took the steps outlined above, beginning with the I-129F she filed on March 9, 2020.  See ECF No. 7-3 (Declaration of Saima Khan), ¶ 4.  Unfortunately for her and her fiancé — and for many other hopeful couples around the world — the outbreak of COVID-19 forced the State Department to

suspend routine visa services shortly thereafter. See U.S. Dep't of State — Bureau of Consular Affairs, Suspension of Routine Visa Services (July 22, 2020), https://bit.ly/2WjdDRA. The State Department initiated a "phased resumption of visa services" several months later, id., and USCIS finished its evaluation of Plaintiff's request in October of 2020. See Khan Decl., ¶ 5. Kamil then applied for a visa and interviewed at the U.S. Embassy in Riyadh, Saudi Arabia, in January 2021. Id., ¶¶ 7–8.

Following the interview, the Embassy informed him that his visa application was being placed under "administrative processing." Id., ¶ 9. It also requested official records of Saima's previous divorce, which she promptly provided. Id., ¶¶ 10–11. Since then, Plaintiff alleges that the application has remained in limbo. See ECF No. 1 (Compl.), ¶¶ 17–18. She contacted the Embassy a number of times in the following months and was told that the application had been "refused after the interview for failure to meet all requirements" but was "pending in the queue" for reconsideration. See Khan Decl., ¶ 13. Saima then brought this lawsuit in June, asserting counts under the APA for "unlawfully withholding or unreasonably delaying action on this visa application," Compl. at 5–7 & ¶ 20; the Mandamus Act on the ground that Defendants "have a clear duty to adjudicate this visa application," id. at 7–8 & ¶ 33; and for the implementation of the CARRP program against Muslims. Id. at 8–9. Defendants now move to dismiss.

**II.     Legal Standard**

The Government moves to dismiss under Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss under that Rule, a complaint must "state a claim upon which relief can be granted." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 552 (2007). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, id. at 555, "a complaint must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief

3

that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Although a plaintiff may defeat a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555–56 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

**III.   Analysis**

In moving to dismiss, the Government makes some non-jurisdictional threshold arguments that the Court need not address given that it agrees with Defendants' merits position — namely, that Plaintiff has failed to state a cognizable claim under either the APA or the Mandamus Act or in relation to DHS's CARRP policy.

A.   APA

Saima asserts that the delay in processing her fiancé's visa application violates the APA. See Compl., ¶¶ 13–30. That Act requires an agency to "conclude a matter presented" to it "within a reasonable time." 5 U.S.C. § 555(b). When an agency fails to do so, a court must "compel agency action unlawfully withheld or unreasonably delayed." Id. § 706(1); see also Bagherian v. Pompeo, 442 F. Supp. 3d 87, 93 (D.D.C. 2020).

To assess whether this delay is unreasonable, the Court turns to the familiar six-factor inquiry outlined in Telecommunications Research & Action Center v. FCC, 750 F.2d 70, 80 (D.C. Cir. 1984) (TRAC):

> (1) the time agencies take to make decisions must be governed by a rule of reason;
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

>(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

Milligan v. Pompeo, 502 F. Supp. 3d 302, 317 (D.D.C. 2020) (quoting TRAC, 750 F.2d at 80); see also Sarlak v. Pompeo, No. 20-35, 2020 WL 3082018, at *5 (D.D.C. June 10, 2020) (applying TRAC factors at motion-to-dismiss stage and collecting cases). These factors "are not 'ironclad,' but rather are intended to provide 'useful guidance in assessing claims of agency delay.'" In re Core Communications, Inc., 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting TRAC, 750 F.2d at 80).

The first two factors, which courts generally consider together, favor the Government. All parties agree that "there is no set deadline" by which the Government must adjudicate visa applications. See ECF No. 6 (Pl. Opp.) at 10; ECF No. 5 (Def. MTD) at 12. The Court turns to the guidance of caselaw in the absence of a "congressionally supplied yardstick." Sarlak, 2020 WL 3082018, at *6. While district courts have not established a bright-line rule, they "have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." Id. (alteration omitted) (quoting Yavari v. Pompeo, No. 19-2524, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019)) (collecting cases). Indeed, many courts have "declined to find a two-year period to be unreasonable as a matter of law." Ghadami v. Dep't of Homeland Security, No. 19-397, 2020 WL 1308376, at *8 (collecting cases); see also Skalka v. Kelly, 246 F. Supp. 3d 147, 154 (D.D.C. 2017) (noting that two-year delay in processing immigration visa "does not typically require judicial intervention").

The processing period for Kamil's visa application has not yet reached the two-year mark that district courts have used as the lowest threshold for a finding of unreasonable delay. See Schwartz v. U.S. Dep't of Homeland Sec., No. 21-378, 2021 WL 4133618, at *3 (D.D.C. Sept. 10, 2021). Plaintiff nevertheless contends that Defendants were required to adjudicate the application within six months. See Pl. Opp. at 10. She cites the preamble from the INA, which provides, "It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b). That "prefatory 'sense of Congress' language," however, "is best interpreted as nonbinding." Palakuru v. Renaud, 521 F. Supp. 3d 46, 51 (D.D.C. 2021) (citing Emergency Coalition to Defend Educational Travel v. U.S. Dep't of the Treasury, 545 F.3d 4, 14 n.6 (D.C. Cir. 2008)). The INA preamble did not obligate the Government to reach a decision in 180 days, as Plaintiff herself conceded by admitting that there is no congressional deadline for visa adjudication. See Pl. Opp. at 10.

Neither is Saima helped by characterizing K-1 visas as "much more straightforward" than other visas, thereby attempting to distinguish the caselaw. Id. at 11. This Court has made no such distinction. See Schwartz, 2021 WL 4133618, at *3 (citing Ghadami and Sarlak to dismiss unreasonable-delay claim for processing of K-1 visa application); Milligan v. Blinken, No. 20-2631, 2021 WL 3931880, at *7 (D.D.C. Sept. 2, 2021) (citing Sarlak for same). Given that courts have countenanced far longer processing delays under pre-pandemic circumstances, the Court finds no basis to conclude that the Government's timeline for adjudicating Kamil's application lacks reason, especially given the logistical challenges that COVID-19 has imposed.

TRAC factors three and five — whether health and welfare are at stake and the nature of the interests prejudiced by the delay — tip toward Plaintiff. Saima, a working mother caring for

three children, explains that she has endured considerable hardship being separated from her fiancé. See Khan Decl., ¶¶ 14–19. The Court has no doubt that such travails negatively affect her health and welfare, and it considers her interest in reuniting with Kamil to be significant. The Government does not seem to seriously dispute this conclusion. See Def. MTD at 15 ("Defendants understand that Plaintiff claims that the processing delay has profoundly impacted the lives of Plaintiff and Plaintiff's family."). While it argues that moving Kamil's application to the front of the line "would simply benefit Plaintiff to the detriment of other noncitizens, who may have experienced the same or worse impacts from a delay," id., that concern is more appropriately evaluated under the fourth TRAC factor, to which the Court turns next.

Factor four — which requires the Court to "consider the effect of expediting delayed action on agency activities of a higher or competing priority" — favors Defendants. TRAC, 750 F.2d at 80. This factor weighs heavily in the TRAC analysis, and "where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain," the D.C. Circuit has found intervention unwarranted — even when all the other TRAC factors pointed towards relief. Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (alterations omitted) (quoting In re Barr Laboratories, Inc., 930 F.2d 72, 75 (D.C. Cir. 1991)). Judicial intervention would create just that scenario here.

Plaintiff maintains that she "is not asking for her fiancé to be put ahead in line of others" because he is already "at the front of the line, simply awaiting the consular officer's completion of administrative processing." Pl. Opp. at 12. That argument, however, assumes that there are no other visa applicants who have been waiting longer for administrative processing or whom the Government has otherwise deemed a higher priority. The COVID-19 pandemic reduced the Government's visa-processing capacity by nearly 90% for several months in 2020, resulting in

7

"an extraordinary backlog of visas across the world." Tate v. Pompeo, 513 F. Supp. 3d 132, 150 (D.D.C. 2021). The U.S. Embassy in Riyadh, where Kamil's application is being processed, faces "substantial backlogs of applications and limited capacity due to COVID-19 mitigation measures." U.S. Embassy & Consulates in Saudi Arabia, Visas (last visited Nov. 16, 2021), https://bit.ly/3CqVyjZ; see also ECF No. 9 (Def. Reply) at 5–6. Processing capacity is presently a zero-sum game, and granting Plaintiff's request to expedite would necessarily mean additional delays for other applicants — many of whom undoubtedly face hardships of their own. See Tate, 513 F. Supp. 3d at 150.

The sixth and final TRAC factor is a wash. A court need not find any impropriety in an agency's inaction to deem a delay unreasonable, and so Plaintiff's "lack of those allegations does not count against [her] here." Ghadami, 2020 WL 1308376, at *9.

On balance, the Court concludes that Plaintiff has not stated an unreasonable-delay claim under the APA. See Sarlak, 2020 WL 3082018, at *6 (collecting cases reaching same conclusion). It recognizes the pain that Saima and her family have experienced because of the ongoing absence of her fiancé — though acknowledgement is likely small comfort. As the Government works to excavate itself from a towering backlog of visa applications, however, its "interests in balancing its own priorities" outweigh Plaintiff's interest in receiving an immediate resolution. See Bagherian, 442 F. Supp. 3d at 96.

B.   Mandamus Act

Saima also asks for relief under the Mandamus Act, see Compl., ¶¶ 31–36, arguing that it gives her "the right to compel [State Department] action on the unreasonably delayed visa application." Pl. Opp. at 14. That claim, however, depends on the delay being unreasonable under the APA. Id. (arguing that Plaintiff's Mandamus Act claim arises from her "clear right to

have the visa application adjudicated under 5 U.S.C. § 706(1)"); see Bagherian, 442 F. Supp. 3d at 96 (quoting Skalka v. Kelly, 246 F. Supp. 3d 147, 152 (D.D.C. 2017)) ("The standard by which a court reviews . . . agency inaction is the same under both § 706(1) of the APA and the Mandamus Act."); Didban v. Pompeo, 435 F. Supp. 3d 168, 177 (D.D.C. 2020). As discussed above, that is not the case. The Court thus finds that Plaintiff has not stated an actionable claim under the Mandamus Act.

### C. CARRP

According to Saima, CARRP is an internal DHS policy that "intentionally delays the applications of Muslims or those from predominantly Muslim countries due to perceived security concerns." Compl., ¶ 38. Because "Plaintiff's fiancé is from a predominantly Muslim country," id., ¶ 41, she asserts that the program "can be implicated in the delay." Pl. Opp. at 15. The fundamental problem with such a claim is that DHS is not the agency delaying visa adjudication; according to Plaintiff herself, that is the State Department and its embassy in Riyadh. See Compl., ¶¶ 15–18. The best Saima can allege is that the State Department "regularly works with DHS when carrying out background and security investigations that are delayed by administrative processing." Id., ¶ 37. Yet that is far too vague to survive dismissal. See Iqbal, 556 U.S. at 678; Ghadami, 2020 WL 1308376, at *6 (dismissing similar CARRP claim as speculative). In addition, aside from a reference to the INA, Plaintiff never makes clear what the legal basis for this count actually is — *e.g.*, the APA, the Constitution, or something else. It thus cannot proceed.

### IV. Conclusion

For the reasons stated above, the Court will grant Defendants' Motion to Dismiss. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: November 17, 2021